UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VICKI REEVE,

                            Plaintiff,

            -vs-                           06-CV-0642C

SEI/AARON'S, INC., d/b/a
AARON'S SALES AND LEASE

                            Defendant.

---

APPEARANCES:   ZDARSKY, SAWICKI & AGOSTINELLI LLP (GERALD T. WALSH, ESQ., of Counsel), Buffalo, New York, for Plaintiff.

                      HODGSON RUSS, LLP (ADAM W. PERRY, ESQ. and JOSEPH S. BROWN, ESQ., of Counsel), Buffalo, New York, for Defendant.

## INTRODUCTION

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), alleging gender discrimination in employment. Defendant has moved for summary judgment on the grounds that plaintiff has failed to state a claim for gender discrimination or retaliation, and failed to allege a hostile work environment claim in her administrative charge to the Equal Employment Opportunity Commission ("EEOC") (Item 30).

## BACKGROUND

On October 31, 2005, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). She stated that she was denied

promotion based on her sex, and was terminated for complaining about gender discrimination (Item 34, Exhs. A, B). On June 27, 2006, the EEOC dismissed the charge finding that the evidence failed to indicate a violation of the law. *Id.,* Exh. D. The EEOC issued a "Right to Sue" letter on June 27, 2006. *Id.,* Exh. E.

Plaintiff commenced this action with the filing of a complaint on September 22, 2006 (Item 1).[1] She alleged that she worked for defendant from approximately March 6, 2004 until October 7, 2005. *Id.,* ¶ 7. On one occasion, she heard two managers laughing and joking about a memorandum stating that women should not be hired to the position of Customer Accounts Manager ("CAM"). *Id.,* ¶ 17. While working at the Niagara Falls store, plaintiff was told that she was being groomed for a CAM position. *Id.,* ¶ 20. The district manager informed plaintiff that she and a male candidate would each be given a month to "try out" for the position. Plaintiff alleges that the male candidate, a cousin of the general manager, was given six weeks to prove himself and was eventually awarded the position. *Id.,* ¶ 20.

In the summer of 2005, plaintiff transferred to the Lackawanna store, believing it was her best chance at a CAM position. Item 1, ¶ 24. On October 7, 2005, plaintiff was advised that she was not ready for a promotion to the CAM position. *Id.,* ¶ 27. Plaintiff then told Dwayne Stone, district manager, that "she would have to begin looking for a new job if opportunities were closed to her . . . ." *Id.,* ¶ 28. Mr. Stone asked plaintiff if she was giving two weeks' notice, and then told her that it was defendant's policy to terminate

---

[1] Plaintiff originally sued SEI/Aarons, Inc. and Aaron Rents, Inc. ("ARI"), its franchisor. ARI successfully moved to dismiss as it had not been named as a respondent in plaintiff's EEOC charge, and plaintiff had not shown a sufficient identity of interest between ARI and SEI/Aarons to excuse the failure to exhaust administrative remedies as to ARI (Item 20).

anyone looking for another job. *Id.,* ¶ 28. Shortly thereafter, plaintiff's employment was terminated. *Id.,* ¶ 30. Plaintiff has asserted two causes of action alleging gender discrimination pursuant to Title VII of the Civil Right Act of 1964 and the New York State Human Rights Law ("NYSHRL").

Defendant filed an answer to the complaint on November 30, 2006 (Item 4). Following discovery, on September 18, 2009, defendant moved for summary judgment (Item 30). Plaintiff filed her response to the motion on October 20, 2009 (Items 40 - 42). Defendant filed a reply on November 10, 2009 (Item 45). The court determined that oral argument was not necessary. For the reasons that follow, defendant's motion for summary judgment is granted, and the complaint is dismissed.

## FACTS[2]

SEI/Aarons, Inc. is an independently owned and operated franchise of Aaron Rents, Inc., engaged in the sales and rental of electronics, furniture, and appliances (Item 31, ¶ 2). SEI/Aarons operates approximately 72 stores in 9 states, including several in Western New York. *Id.* Each store has a General manager ("GM") responsible for direct management of the store. The Customer Accounts Manager ("CAM") is responsible for the renewal payment process. A Customer Accounts Advisor ("CAA") assists the Customer Accounts department. As a general rule, an employee must master the essential functions of the CAA and CAM positions in order to be promoted to GM. *Id.,* ¶¶ 4-5.

---

[2] The factual statement is taken from plaintiff's deposition testimony (Item 34, Exh. H; Item 43, Exh. 3)), her affidavit in opposition to the motion (Item 40), and declarations filed by Dwayne Stone (Item 31), Robert Barnes (Item 32), and Angie McIntosh (Item 33).

3

Plaintiff initially interviewed with Dave Jorden, the District Manager at the time. She accepted a position with defendant, believing that there would be an opportunity for advancement within a year (Item 43, Exh. 3, p. 32). Plaintiff began her employment with SEI/Aarons on approximately February 23, 2004 (Item 31, ¶ 8). She was assigned to the Niagara Falls store as a Sales Manager, and then worked in various capacities in the Tonawanda and Lackawanna stores. *Id.,* ¶ 9.

Plaintiff testified that various co-workers told her that she would never be promoted to a management position. One co-worker, Sandy Odom, told plaintiff to "look around" and see that there was only one female general manager locally and no female CAMs (Item 43, Exh. 3, p. 43). Gerald Welch, the GM of the Niagara falls store, told her to "forget it;" that she would never be promoted to the CAM position. *Id.,* p. 60. She also heard Dave Jorden and a GM joking about a memorandum in which they were instructed not to hire women as CAMs. When she asked about it, Jorden stated that he was told to shred the document, and the two men continued laughing (Item 40, ¶¶ 9-10). Plaintiff testified that the two men were laughing and joking in the presence of other employees, but plaintiff believed that the memorandum was real (Item 43, Exh. 3, p. 126).

Plaintiff testified that she and another employee, Joe Welch, who was the cousin of the GM at the Niagara Falls store, competed for a CAM position. Gerald Welch, the GM, told plaintiff that he would prefer her for the position, but it was not his decision (Item 43, Exh. 3, p. 65). Plaintiff was told that Joe Welch was a "better pick." *Id.,* p. 66. According to Reeve, Welch did "a good job," and his numbers were comparable to hers. *Id.,* p. 64. It was her opinion that he got the promotion over her because he was male. *Id.* Plaintiff

4

also complained that Welch had more time to prove himself in the position. *Id.,* pp. 135-38. Dwayne Stone, former District Manager, stated in a declaration that there was no "contest" between plaintiff and Joe Welch for a CAM position at the Niagara Falls store. Instead, both plaintiff and Welch were given an opportunity to develop the necessary skills for the job (Item 31, ¶ 4). Ultimately, Stone decided to promote Welch because he exhibited superior leadership skills. He also stated that gender did not enter into his decision. *Id.,* ¶ 5.

Three months after her one-year anniversary, plaintiff's performance was reviewed. Dwayne Stone and Gerald Welch praised her professionalism, organizational skills, and customer rapport, but she was not given a promotion or raise (Item 40, ¶ 32). Plaintiff stated that many men were hired and given management positions on a fast track, while no women were considered for the CAM position during her tenure. *Id.,* ¶ 37.

Plaintiff transferred to the Lackawanna store in the hopes of filling a CAM position that had been vacated. She described the GM at the Lackawanna store, Kim Tanyi, as a tyrant and their working relationship as "[n]ot good" (Item 43, Exh. 3, p. 75). Plaintiff said that Tanyi had a personal vendetta against her, possibly because plaintiff was acquainted with Tanyi's boyfriend (Item 34, Exh. H, pp. 77, 81). She testified that Tanyi told another employee that plaintiff would be a CAM "over her dead body." *Id.,* p. 83.

Stone denied that he promised plaintiff a promotion at the Lackawanna store. Rather, he told her to learn the functions of the position and her performance would be reviewed in 30 to 60 days (Item 31, ¶ 7). For two weeks in September 2005, plaintiff served as the "person in charge" of the Lackawanna location while GM Kimberly Tanyi was on vacation and disability leave. *Id.,* ¶ 8. Following this period, Stone conferred with Tanyi

5

regarding plaintiff's performance and learned of several problems, including money that was unaccounted for, a missing big screen TV, problems with customers, and unfinished tasks and paperwork.  *Id.,* ¶ 9.

Plaintiff met with Tanyi and Stone on October 7, 2005.  Stone praised plaintiff's organizational skills, but told her that she did not have the leadership skills to be promoted to the CAM position at that time (Item 43, Exh. 3, p. 108-09).  Plaintiff admitted that she became angry (*id.,* p. 109), and said that if she was "not going to be promoted . . . [she] would probably have to look for . . . other employment."  *Id.,* pp.111-12.  Plaintiff testified that, at that point, Stone's demeanor changed.  *Id.,* p. 112.  Stone then advised plaintiff that she could not continue to work while she looked for another job (Item 31, ¶ 10).  He explained that in some cases, he has allowed employees to work during the notice period based on business needs.  *Id.,* ¶ 11.  Following the meeting, Stone telephoned his supervisor, who concurred in the decision to accept plaintiff's resignation and pay her in lieu of notice.  Plaintiff's resignation was accepted effective October 8, 2005, and she was paid through October 17, 2005.  *Id.,* ¶ 12.  She admitted at her deposition that the fact that she mentioned that she would have to start looking for other work factored into the decision to terminate her position.  Item 34, Exh. H, p. 118.

Robert Barnes, defendant's Director of Eastern Operations, stated in a declaration that there were several female employees in management positions at stores in the Western New York area in or around the time that plaintiff left the company (Item 32, ¶ 7), including Kimberly Tanyi, General Manager of the Lackawanna store.  *Id.,* ¶ 10.  In August 2005, a vacancy arose for a CAM position at the Lackawanna store (¶ 11).  On October 7,

2005, Barnes received a telephone call from Stone regarding plaintiff, who had been told that she would not be promoted and who indicated that she wished to resign. *Id.,* ¶ 12. Stone explained that plaintiff was not ready for the promotion, and that some issues had arisen with plaintiff's customer relations and management skills. *Id.,* ¶ 13. Stone told Barnes that plaintiff should leave defendant's employ immediately, as she was very upset by the decision not to promote her. *Id.,* ¶ 14. Barnes agreed with Stone that plaintiff's resignation should be accepted and that she should be paid in lieu of notice. *Id.,* ¶ 15.

Angie McIntosh, defendant's Comptroller, stated that as part of her duties, she oversees the human resources function for SEI/Aaron's (Item 33, ¶ 2). She stated that every new employee is advised of the company's anti-discrimination policy and must acknowledge receipt of the policy. *Id.,* ¶ 4. The policy is published in the employee handbook, and employees are provided a toll-free telephone number to report instances of harassment or discrimination. *Id.,* ¶ 5-6. Defendant also has a program, called "Mad, Sad, Glad," by which employees can report anything, positive or negative, to management by way of a postage-paid form letter to the Chief Executive Officer. *Id.,* ¶ 7. Finally, every pay stub contains an advisory to the employees which states: "If you feel discriminated against or sexually harassed, call the home office at 1-888-464-0494." *Id.,* ¶ 8. Ms. McIntosh reviewed the defendant's records of complaints received and did not find any document indicating that plaintiff had complained about discrimination of any kind. *Id.,* ¶ 9.

Plaintiff testified that she complained about the "contest" for the CAM position at the Niagara Falls store by filling out a form which she gave to Gerald Welch. She said that she got no response and did not follow up on her complaint (Item 43, Exh. 3, pp. 86-89). She

7

also complained using a "Mad, Sad, Glad" form when she was not allowed to transfer out of the Lackawanna store. *Id.,* pp. 93-5. Plaintiff acknowledged that she received a copy of the company policy on non-discrimination, sexual harassment, and open advancement. Plaintiff never called the home office to complain, as directed in the policy. *Id.,* pp. 101-02.

In response to the motion, plaintiff submitted the decision of the New York State Unemployment Insurance Appeal Board, in which the Board found "a lack of substantial evidence to prove that the claimant intended to voluntarily end her job as of October 7, 2005" and allowed plaintiff unemployment benefits (Item 43, Exh. 1). Additionally, she submitted a statement from Chad Goodwin, an employee at the Lackawanna store, who stated that plaintiff did all that was asked of her, that Kimberly Tanyi had no problems with plaintiff, that Dwayne Stone refused to assign plaintiff back to the Niagara Falls store, and that plaintiff did not intend to leave the company but was terminated (Item 43, Exh. 2).

## DISCUSSION

**1. Summary judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Fed. R. Civ. P. 56(e)(2). In raising a triable issue of fact, the nonmovant carries only a "limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir. 1993). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing *Matsushita*, 475 U.S. at 587). "An opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981).

## 2. Disparate Treatment

Plaintiff's claim of failure to promote and discriminatory discharge based on gender pursuant to Title VII is analyzed under the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Additionally, claims brought pursuant to the NYSHRL are analyzed in accordance with the standards governing Title VII claims. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000) (consideration of discrimination claims brought pursuant to the NYSHRL are analyzed under Title VII framework) (citing *Leopold v. Baccarat, Inc.,* 174 F.3d 261, 264 n.1 (2d Cir. 1999)). Accordingly, these discrimination claims will be addressed together.

Under the Title VII framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. To establish a *prima facie* case, the plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her job, (3) she suffered an adverse employment action, and (4) such adverse employment action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802-03. The Second Circuit has "characterized this burden as 'de minimis:' it is 'neither onerous, nor intended to be rigid, mechanized or ritualistic.'" *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001)).

If the plaintiff can establish a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged adverse employment action. *McDonnell Douglas*, 411 U.S. at 802-03. If the employer meets its burden, the plaintiff must present evidence to show that the employer's reason is a mere

pretext for an impermissible discriminatory motive. *McDonnell Douglas,* 411 U.S. at 804; *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006). In the summary judgment context, this means the plaintiff must "establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for its decision to discharge is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1225 (2d Cir. 1994).

Defendant argues that plaintiff has failed to set forth any evidence that the denial of a promotion, either at the Niagara Falls store or at the Lackawanna store in October 2005, occurred under circumstances giving rise to an inference of discrimination and that plaintiff has failed to state a *prima facie* case under *McDonnell Douglas.* Plaintiff alleges that she was not promoted to the CAM position following a "contest" between her and Joe Welch at the Niagara Falls store. She admits that she and Welch had similar "numbers" and that Welch did a "good job" during the time that they allegedly competed for the position. When Welch was awarded the position, plaintiff was told that Welch had exhibited superior leadership skills and that she was simply "not ready" to take on the CAM position. Similarly, in October 2005, plaintiff met with Tanyi and Stone to discuss her performance at the Lackawanna store. Plaintiff was advised that she would not be promoted to the CAM position at that time, at least in part due to various performance issues that arose while she was in charge of the Lackawanna store during Tanyi's absence.

In support of her *prima facie* case, plaintiff argues that several co-workers expressed their opinions that women were not promoted into management positions at SEI/Aarons. It is well established that isolated, stray remarks, even if made by a decision-maker, do not, without more, constitute sufficient evidence to support an inference of discrimination. *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir. 1998); *see also Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (noting that "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be"). Here, plaintiff has offered hearsay testimony of what others may have said regarding the lack of women in management positions. None of the alleged comments was made by an individual with decision-making authority, and there is no nexus between these alleged remarks and the denial of her promotions. Additionally, while the number of male and female employees in management positions were far from equal, the EEOC found during its investigation that there was at least one female GM out of ten and one female CAM out of six (Item 34, Exh. D).

Additionally, plaintiff stated that several men were "fast-tracked" into management positions before she was considered for promotion, including Brandon Tibbetts and Roger Fadness. However, plaintiff could not provide specific information on these employees or their backgrounds so as to make a valid comparison (Item 34, Exh. H, pp. 140-45). She admitted that she had no "personal knowledge," only "hearsay knowledge," and that the workplace "was one big gossip fest." *Id.,* p. 146. Plaintiff also stated that Tanyi, the GM at the Lackawanna store, had a personal vendetta against her and may have had input into the decision not to promote her.

Assuming that plaintiff has sustained her burden of presenting a *prima facie* case of discrimination, defendant has articulated a legitimate, non-discriminatory reason for its decision not to promote her. In the first instance, Welch was said to have exhibited superior leadership skills. In October 2005, defendant articulated several performance issues at the Lackawanna store, including the missing money and inventory and issues with customers. Plaintiff disputes that those issues were genuine, and seeks to show that defendant's stated reasons for failing to promote her were pretextual. However, plaintiff must set forth some evidence that the failure to promote was based on gender discrimination. There is nothing in the record, other than plaintiff's speculation, to suggest that gender discrimination was the reason she was not promoted. It is not sufficient for a plaintiff to show merely that she satisfies "*McDonnell Douglas's* minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000). Instead, the appropriate question is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue–that is, whether the record contains sufficient evidence to support an inference of discrimination. *See James*, 233 F.3d at 154; *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000). Plaintiff has offered stray remarks, hearsay, and speculation regarding the lack of women in management and her testimony of poor relations between her and a female GM. She has failed to establish a genuine issue of fact that the denial of her promotion to the CAM position was based on her gender.

Plaintiff also argues that she was discriminated against when she was abruptly terminated and not allowed to work during the two-week notice period. Plaintiff admits that

she expressed a desire to look for another job after she was told that she was not being promoted at that time. A review of the record suggests that Stone did not go into the meeting intending to fire plaintiff, and plaintiff did not intend to quit her job at that time. The record reflects that plaintiff and Stone likely reacted in anger, and that Stone, with the concurrence of his superior, decided that it would be disruptive to keep plaintiff on the job. Thus, plaintiff was terminated immediately and paid for the notice period. Plaintiff has presented nothing but her own speculation to suggest that her termination occurred under circumstances giving rise to an inference of discrimination. She argues that male employees were allowed to work during the two-week notice period, but was unable to provide specifics during her deposition (Item 43, Exh. 3, p. 165). Accordingly, plaintiff's claim of discriminatory failure to promote and termination is dismissed.

### 3. Retaliation

Retaliation claims under Title VII are also examined under the same *McDonnell Douglas* burden-shifting framework utilized for disparate treatment claims. *See Terry v. Ashcroft,* 336 F.3d 128, 141 (2d Cir. 2003). Retaliation claims under the NYSHRL, like discrimination claims, are also governed by the same standards as federal claims under Title VII. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

A plaintiff makes a *prima facie* showing of retaliation by establishing that (1) she participated in a protected activity known to the defendant; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). To

meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* discrimination case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003).

Once a plaintiff has satisfied her *prima facie* burden, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory basis for its action. *See Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004). The burden then shifts back to plaintiff to demonstrate that the reasons proffered by defendant were a pretext for retaliatory animus based upon protected Title VII activity. *See Sista v. CDC Ixis N. Am. Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

Plaintiff's retaliation claim is not entirely clear. She seems to argue that her termination was in retaliation for her complaints that she was not being promoted based on gender. Assuming that her complaints constitute "protected" activity for purposes of Title VII and that plaintiff has established a *prima facie* case of retaliation, she nonetheless has set forth no proof to suggest that defendant retaliated based on gender discrimination. As stated above, plaintiff's termination on October 7, 2005 occurred after a meeting in which plaintiff was advised that she would not be promoted at that time. It is apparent from the record that Stone did not go into the meeting intending to fire plaintiff. When told that she would not be promoted, plaintiff became angry and expressed a desire to look for another job. Stone then provided her with that opportunity by terminating her employment. There is noting in the record to suggest that plaintiff was terminated in retaliation for any protected activity. Accordingly, plaintiff's claim of discriminatory retaliation is dismissed.

**4. Hostile Wok Environment**

To the extent that plaintiff in her complaint purports to allege the existence of a hostile work environment, this claim must also fail. Plaintiff did not allege a hostile work environment in her charge to the EEOC. At her deposition, plaintiff admitted that she was not complaining about harassment in the workplace as part of this lawsuit (Item 34, Exh. H, pp. 102-03). Finally, plaintiff has set forth no evidence that the workplace was so permeated with discriminatory harassment and intimidation that it altered the terms and conditions of her employment. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993). Accordingly, any hostile work environment claim is dismissed.

## CONCLUSION

Defendant's motion for summary judgment is granted, and the complaint is dismissed. Judgment shall be entered for defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: May    27   , 2010
p:\opinions\06-642.may172010